Daniels, J.—
The object of the action was the recovery of damages for the decease of the son of the plaintiff, in October, 1882. The plaintiff was passing from a steamer on pier 54, East river, and on his way was met by the intestate, who was then a bright, promising boy of about six years old. While they were passing along the pier to the street the boy disappeared through a decayed part of the surface of the wharf and was drowned, and it is as his administrator that the plaintiff has brought this action against the defendants as the owners of the easterly part of *417 the pier, which included the spot where the deceased passed through. It was charged as a ground of the action that the pier was in an unsafe condition at the time they leased it, as they did, on or about the 1st of May, 1880, to a tenant who continued in its possession up to the time of the accident, and that they were negligent in leasing the pier in its decayed condition, and as the result of such negligence this accident was produced. There was no direct evidence on the trial that the easterly half of the pier, was as a matter of fact, in an unsafe or decayed condition at the time when the leasing took place. But the plaintiff proposed to supply proof of that fact by questions put to his witnesses on the trial, which were not permitted to be answered. The Surveyor, who, in April, after the accident, made an examination and survey of the place, was asked whether he observed that any of the planks were rotten or dilapidated. This was objected to and the objection was sustained, to which an exception was taken by the counsel for the plaintiff. He was then asked, “What were the dimensions, generally, of the plank upon this pier ? ” and the answer was in like manner excluded and an exception taken. Then the witness was asked, “Do you know about what length of time it would take planks of three or four inches in thickness, exposed upon that pier, to become rotten or dilapidated ? ” This was also objected to, the objection sustained and an exception taken.
Another witness sworn on behalf of the plaintiff who appears to have been acquainted with the pier in October, 1882, stated that it was generally in bad condition. He further answered that at the outer end of the pier the timbers and planks were rotten. The planking of the pier was shown by the same witness to have been spruce about four inches in thickness. The witness was then asked: ‘ ‘ About how long if you know would four inch spruce plank, be there upon that pier before they would become rotten?” This was in like manner objected to, the objection sustained and an exception taken to the exclusion of the answer. He was further asked “How long had this pier been a bad one?” And this question was disposed of in the same manner as the others had been, by which it was proposed to show the probable length of time that the plank would have continued in exposure and use before it would have reached a rotten existence. If these questions had been allowed to be answered it is quite probable that the answers would have supplied evidence upon which the jury might have found that the pier was in a decayed condition at and before the time when it was leased to the tenant. There might have been grounds supplied in that manner, from *418 which it could reasonably have been argued, that there was negligence on the part of the defendants in leasing and placing this property in the possession of the tenants in a, dilapidated and unsafe condition.
The questions which were put to the witnesses were not objected to because of their supposed incompetency to-answer them. If that had been the form of the objection, then by further questions it might have been removed by answers obtained from the witnesses exhibiting their knowledge or experience concerning the probable length of time that timber of this quality might be used, as this timber had been, before it would reach the unsafe condition in which it appears to haye been when the accident took place. For that reason no question of competency of the witnesses is included in the case. But the point presented is whether from competent witnesses the evidence proposed to be obtained was admissible. And that it should haye been received is reasonably free from doubt. The investigation which it was proposed, to make through the intervention of these questions was reasonable and direct and might very well have resulted in evidence which would have logically satisfied the jury that the planking on the pier must have been in a dilapidated and unsafe condition, at and before the time when the letting took place in the year 1880. But whether the evidence obtained would have been as satisfactory as that, it is not necessary to decide, for as long as the questions had a tendency to produce such evidence they should have been allowed to be answered by the witnesses.
It was error to exclude the answers, and for this error without considering the effect of the evidence actually produced upon the trial, the judgment should be reversed, and a new trial ordered with costs to abide the event.
Van Brunt, P. J., concurs.
Bartlett, J.
Two of the respondents are sued as part owners, and two as executors of another part owner of pier 54, East river, in the city of New York. On May 1, 1880, it was leased to Frank Phelan for a term of five years. On October 8, 1882, while the pier was occupied by the lessee, the plaintiff’s son, a lad of six years of age, fell through a hole in the structure and was drowned. This action is brought by the father as administrator to recover damages for the boy’s death.
The lessee, Frank Phelan, was impleaded as a defendant, but made default upon the trial. As to the other defendants, the present respondents, the question is whether there was sufficient evidence in the case to have warranted a jury in finding that the pier when leased was in so bad and *419 dangerous a condition as to occasion the defect which caused the accident. If there was sufficient evidence, and the respondents stand in the position of lessors, it was error to dismiss the complaint.
The proof as to the title of the defendants is referred to, but not set out in the record, and it is impossible for us to tell what it was. In the brief for the defendants Steele and Hulton it is argued that they are not liable as lessors, because they did not acquire any interest in the property until after a year after the pier was leased, but the evidence on this subject is too obscurely stated in the case to enable us to say what the fact is in that respect. At all events the motion to dismiss was distinctly based on the assumption of ownership by the defendants at the time of the lease, and they should not be permitted to deny such ownership for the purposes of this appeal.
The principal testimony tending to show the state of the pier when the lease was made was given by William L. McConkey, who was corporation wharfinger at the time of the accident. It was as follows:
“ Q. How long have you known that pier to be a bad one ? A. From the 16th June, 1881.
“ Q. Had you any knowlege of its dangerous condition before that time ? A. Yes, sir; I went the rounds for my father when he was sick.
“ The Court.—Did you know anything about the pier prior to your appointment as wharfinger from your examination ? A. Only when I went to the rounds for my father—examining it.
“ By Counsel.—Q. When did you go the rounds for him ? A. In 1880.
“ Q. How often did you go ? A. Every day; because he was sick.
“ Q. Was not the pier then about as bad as it was in 1882 ? A. Yes, sir.
“Q. What was the trouble ? A The spiles were gone; the timbers were rotten; the crib-work was gone with the tide.
“ Q. That applies as well to 1880 as 1882 ? A. Yes, sir.”
This evidence points to a condition of the pier in 1880 so bad that, if not actually dangerous then,, it must have been presently liable to become dangerous in the course of ordinary use. It is true the testimony of the wharfinger relates only generally to the year 1880, without specifying any particular month, so that his observation of the condition of the pier may have been made subsequent to the execution of the lease; but, on the other hand, it may well be said that the witness intended to cover the whole year, and we think such is the fair import of his testimony in the absence of any limitation.
Three special defects are noted as existing in 1880: The spiles were gone, the timbers were rotten, and the crib-work was gone with the tide. Could the holes which existed in the pier in 1882, including the hole through which the plaintiff’s boy fell, have been formed in consequence of these defects or any of them ? Whether the hole which occasioned the accident was produced by the rottenness of *420 the planking rather than by the giving way of timbers or piles or crib-work underneath, does not appear; but the evidence will fairly sustain the inference that the latter may have been the operative cause, and, if so, the lessors could be held liable, in view of the wharfinger’s testimony to the effect that these under-portions of the structure were in a defective condition at the time of the demise.
The judgment should be reversed and a new trial granted, with costs to abide the event.